UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. STEINBERG,<br><br>                    Plaintiff,<br><br>          v.<br><br>PROVIDENT FUNDING ASSOCIATES,<br>L.P.,<br><br>                    Defendant. | Case No.  15-cv-03743-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 16 |

This is a putative class action brought by Plaintiff Robert Steinberg against Defendant Provident Funding Associates, L.P ("Provident"), alleging claims for breach of contract, "unconscionability," conversion, unjust enrichment, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Before the Court is Provident's Motion to Dismiss Class Action Complaint and Motion to Strike.  ECF No. 16.  For the reasons set forth below, the Court will grant the Motion to Dismiss and deny the Motion to Strike.

## I.      BACKGROUND

### A.      Allegations in the Complaint

Plaintiff alleges that he and Provident entered into a written contract "whereby Provident agreed to fund and service his mortgage."  ECF No. 1 ¶ 37.  Under the loan agreement, payments are due to Provident on the 1st of each month.  Id. ¶ 16.  If payment is not received by the 16th of the month, Provident assesses a late fee.  Id.  According to Plaintiff, "[e]ven when customers making their monthly mortgage payment by check or money order submit payment on time, Provident assesses a late fee."  Id. ¶ 18.

On February 7, 2015, Plaintiff's wife, who is also a signatory to the loan agreement, mailed their February mortgage payment to Provident via regular mail.  Id. ¶ 19.  On February 18, 2015, Plaintiff's wife received a telephone call from Provident informing her that Provident had

not received the mortgage payment for February.  Id. ¶ 20.  After speaking with a Provident representative that same day, Plaintiff's wife completed the February mortgage payment online. Id. ¶ 22.  On February 19, 2015, Provident sent a letter to Plaintiff stating that Provident had received Plaintiff's February mortgage check but that it was "unable to apply the funds to [Plaintiff's] account due to the following reason: Payment stop on check."  Id. ¶ 23, Exhibit A. Neither Plaintiff nor his wife ever placed a stop payment order on the February mortgage check. Id. ¶ 23.  Provident subsequently assessed a late fee of approximately $200 on Plaintiff's account. Id. ¶ 24.

Plaintiff bolsters his own allegations regarding the allegedly fraudulent late fees by quoting numerous consumer complaints posted online.  Id. ¶ 18.  For instance, one of the online complaints claimed that Provident "sent me a late notice when they had check in hand."  Id. Another complaint stated: "Provident has 'lost' my mailed payments and charged me late fees when the payment was mailed with a week to spare."  Id.  Still another complaint stated: "Late fee is incurred if received after the 16th of the month.  I mailed payment on the 9th.  Provident said they didn't receive it until the 17th which is BS because I mailed an insurance payment to a company in [California] the same day . . . and they received it on the 13th."  Id.  A fourth complaint "wonder[ed] if [Provident was] just holding onto the checks to purposely make them late so that they can charge a late fee."  Id.

**B.     Defendant's Requests for Judicial Notice**

Pursuant to Federal Rule of Evidence 201, Defendant asks the Court to take judicial notice of (1) a November 29, 2011 Note (the "mortgage loan agreement") between Plaintiff and Bank of Texas, which loan agreement Defendant asserts forms the basis of Plaintiff's claims; (2) a November 29, 2011 Purchase Money Mortgage between Plaintiff and Bank of Texas; and (3) a May 20, 2015 Satisfaction of Mortgage between Plaintiff and Defendant.  ECF No. 17.  Plaintiff does not oppose Defendant's request for judicial notice.  ECF No. 18.  The Court grants judicial notice of the November 29, 2011 mortgage loan agreement because it is a "document whose contents are alleged in a complaint and whose authenticity no party questions, but which [is] not physically attached to the [plaintiff's] pleading."  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir.

United States District Court
Northern District of California

2

2005) (internal quotation marks omitted).  The Court also grants judicial notice of the second and third documents submitted by Defendant, as these documents are both recorded in the official records of Monroe County, Florida.  See Lee v. City of Los Angeles, 250 F.3d 668, 669 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record.'") (internal quotation marks omitted); see also Rosal v. First Fed. Bank of Cal., 671 F. Supp. 2d 1111, 1121 (N.D. Cal. 2009) (taking judicial notice of "documents recorded in the Official Records of Alameda County").

### C.    Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## II.    MOTION TO DISMISS

### A.    Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  When addressing a motion to dismiss, courts must determine whether a plaintiff has pled "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Courts must accept both the material facts alleged in the complaint and any reasonable inferences to be drawn from those facts as true.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  But "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient bases to support a complaint.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

When any of a complaint's causes of action allege fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  This heightened standard requires the complainant to identify "what is false or misleading about a statement, and why it is false."  Decker v. GlenFed, Inc., 42 F.3d 1541, 1548 (9th Cir.1994).  In essence, a cause of action governed by Rule 9(b) must include "the who, what, when, where, and how" of the allegedly fraudulent conduct.  Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997).  Courts must apply this standard to both claims in which fraud is an

3

United States District Court
Northern District of California

1  essential element and those in which the complainant "allege[s] a unified course of fraudulent

2  conduct and rel[ies] entirely on that course of conduct as the basis of a claim." Vess, 317 F.3d at

3  1103.  The heightened pleading standard should not, however, be applied to causes of action

4  neither rooted individually in fraud nor attached to a claim in which fraudulent conduct is an

5  essential element. Id. at 1105.

6       "Where averments of fraud are made in a claim in which fraud is not an element, an

7  inadequate averment of fraud does not mean that no claim has been stated.  The proper route is to

8  *disregard* averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has

9  been stated." Id. (quoting Lone Star Ladies Inv. Club v. Schlotzsky's Inc., 238 F.3d 363, 368 (5th

10  Cir. 2001)).  "Thus, if particular averments of fraud are insufficiently pled under Rule 9(b), a

11  district court should 'disregard' those averments, or 'strip' them from the claim.  The court should

12  then examine the allegations that remain to determine whether they state a claim." Id.

13       **B.      Analysis**[1]

14            **1.      Breach of Contract**

15       Plaintiff's first cause of action is for breach of contract and breach of the covenant of good

16  faith and fair dealing.  ECF No. 1 ¶¶ 36–41.  Generally, "[a] breach of contract claim falls outside

17  the reach of Rule 9(b) because such a claim does not require intent to defraud, a false

18  representation, or other elements of fraudulent misrepresentation." Ronpak, Inc. v. Elecs. for

19  Imaging, Inc., No. 14-cv-04058-JST, 2015 WL 179560, at *4 (N.D. Cal. Jan. 14, 2015) (citing

20  Vess, 317 F.3d at 1105–06).  Here, however, Plaintiff alleges that "Provident has breached the

21  covenant of good faith and fair dealing in its contracts with Plaintiff and the Class by assessing

22  fraudulent late fees and associated penalties." Id. ¶ 39.  Because Plaintiff has made an averment

23  of fraud "in a claim in which fraud is not an element, . . . [t]he proper route is to disregard" such

24  averment of fraud if it does not meet Rule 9(b)'s standard and "then ask whether a claim has been

25  stated" under Rule 8's more lenient standard. Vess, 317 F.3d at 1105 (quoting Lone Star

26

27  _____

28  [1] The parties do not dispute that Florida law governs Plaintiff's claims.  See ECF No. 16 at 10; ECF No. 18 at 11 n.5 (failing to explicitly address which law governs Plaintiff's claims, but noting that "the late fees at issue here are sufficiently identifiable under Florida law.").

United States District Court
Northern District of California

1    *Ladies*, 238 F.3d at 368).

2       Defendant argues that under either standard of review Plaintiff's claim must be dismissed

3    because "[t]he Complaint lacks a critical, foundational fact:  Plaintiff *never alleges* that Provident

4    received the Steinbergs' late payment within fifteen calendar days of the February 1 due date."

5    ECF No. 16 at 5 (emphasis in original).  Rather, "[t]he Complaint alleges only that [Plaintiff's]

6    wife *mailed* the payment on Saturday, February 7; that Provident claimed not to have received it at

7    some point on February 18, and that on February 19, Provident returned the check along with a

8    form letter stating that the check could not be cashed due to a stop payment."  ECF No. 16 at 5–6

9    (citing ECF No. 1 ¶¶19–23).  According to Defendant, Plaintiff's failure to allege when payment

10   was received by Defendant is fatal to Plaintiff's breach of contract claim because that claim

11   "depends on the theory that Plaintiff's payment was timely received."  ECF No. 16 at 6 (quoting

12   ECF No. 1 at ¶ 39 (alleging that Provident "breached the covenant of good faith and fair dealing . .

13   . by assessing fraudulent late fees and associated penalties.").

14       The Court agrees with Defendant's argument in this respect.  Plaintiff's breach of contract

15   claim is premised on a loan agreement between Plaintiff and Bank of Texas,[2] which provides: "If

16   the Note Holder has not <u>received</u> the full amount of any monthly payment by the end of 15

17   calendar days after the date it is due, I [the borrower] will pay a late charge to the Note Holder."

18   ECF No. 17-1 at §6(A) (emphasis added).  However, Plaintiff does not allege in the Complaint

19   when Defendant received his February payment.  <u>See</u> ECF No. 1 ¶¶ 19–23.  It does not require the

20   formal exercise of judicial notice to observe that sometimes, when an item of correspondence is

21   mailed, it does not reach its destination.  While Plaintiff does allege that his wife mailed the

22   February mortgage payment check on February 7, 2015, <u>id.</u> ¶ 19, Plaintiff has not pled facts upon

23   which the Court can draw a reasonable inference that Defendant breached the loan agreement by

24   charging Plaintiff a late fee despite its having received payment by February 16, 2015.  <u>See</u> ECF

25   No. 17-1 at §6(A).

26       Plaintiff's arguments to the contrary are unpersuasive.  First, Plaintiff argues that the Court

27

28   ―――――――――――――――――
     [2] The servicing of Plaintiff's mortgage appears to have been transferred to Defendant in August
     2013.  <u>See</u> ECF No. 1 ¶ 6; ECF No. 16 at 2.

                                                  5

should apply a presumption that mail is received within 3 days of its mailing.  ECF No. 18 at 2–3.

However, none of the cases cited by Plaintiff stand for this proposition.  Indeed, most of the cases

cited by Plaintiff involved application of what was then Fed. R. Civ. P. 6(e) (now Fed. R. Civ. P.

6(d)), which provided: "Whenever a party has the right or is required to do some act or take some

proceedings within a prescribed period after the service of a notice or other paper upon the party

and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed

period."  The rule does not create a legal presumption that mail is received within 3 days of its

mailing, and by its terms does not apply in this case, since no deadline here is alleged to be

triggered by "the service of a notice or other paper."  Accordingly, the Court rejects Plaintiff's

argument in this respect.

      Second, Plaintiff argues that the Complaint "includes a number of internet postings by

other consumers who have gone through the same experience with Provident, in some cases

mailing their payments more than two weeks prior to expiration of the grace period."  ECF No. 18

at 3.  According to Plaintiff, these complaints "illustrate that Provident is doing the same thing it

did to [Plaintiff] to others . . . ."  Id. at 3–4.  However, these complaints suffer from the same fatal

deficiency as Plaintiff's own allegations:  they fail to provide the Court with sufficient facts from

which the Court could draw a reasonable inference that Defendant breached its contract with the

complainants because none of the complaints sufficiently allege that Defendant *received* a

mortgage payment before the due date.  Rather, the online complaints merely claim that a

mortgage check was sent in a "timely" fashion and that Defendant nonetheless assessed a late

charge.  See, e.g., ECF No. 1 at 6 ("Provident has 'lost' my mailed payments and charged me late

fees when the payment was mailed with a week to spare."); id. at 8 (Provident "claim[s] not to

have received my check twice that I mailed on time each month."); id. at 9 ("We mailed our

mortgage in a timely fashion. . . . I wonder if they're just holding onto the checks to purposely

make them late so that they can charge a late fee."); id. at 9 ("In October, I mailed my check at the

post office on the 4th and it was not credited until the 19th."); id. at 10 ("I used to mail my

payment by [the 8th or 10th] of each month as it is due by the 16th.  We have noticed that, at least

once a year, [Provident] ask[s] us to pay $50 penalty for late charge. . . . We strongly believe that

6

1    [Provident], even if they receive the payment before the 16th, they accuse the post office for

2    delivering it late.").[3]

3          Therefore, the Court grants Defendant's motion to dismiss Plaintiff's first cause of action

4    for breach of contract and breach of the covenant of good faith and fair dealing without prejudice.

5          **2.**     **Unconscionability, Conversion, Unjust Enrichment, and Violation of FDUTPA**

6          Plaintiff also brings claims for "unconscionability," conversion, unjust enrichment, and

7    violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §

8    501.201, *et seq.* ECF No. 1 ¶¶47–73. As Defendants note, however, each of these claims is

9    premised on the same allegedly fraudulent conduct as Plaintiff's breach of contract claim, namely

10   Defendant's alleged practice of fraudulently collecting late fees. ECF No. 1 ¶ 43

11   (unconscionability) ("Provident's late fee policies and practices are substantively and procedurally

12   unconscionable . . . ."); id. ¶ 49 (conversion) ("Provident has wrongfully collected late fees from

13   Plaintiff and the Class . . . ."); id. ¶60 (unjust enrichment) ("Provident . . . retain[ed] benefits it

14   received, and is still receiving, without justification, from the imposition of fraudulent late fees on

15   Plaintiff and the Class . . . ."); id. ¶ (FDUTPA) ("Provident's conduct, as alleged herein,

16   constitutes unconscionable, unfair, and deceptive acts or practices in violation of the DUTPA.")

17   As discussed above, Plaintiff has failed to sufficiently allege that Defendant charged Plaintiff a

18   late fee in violation of the loan agreement. Plaintiff does not attempt to plead any other wrongful

19   or fraudulent conduct committed by Defendant in relation to the imposition of late fees.[4] Nor does

21        [3] The Court denies Defendant's motion to strike the online complaints from the Complaint. ECF
22   No. 16 at 8–9. While the Court concludes that these complaints are not sufficient to satisfy Rule
     8's pleading standard, the Court does not find that these complaints are "redundant, immaterial,
23   impertinent or scandalous." Fed. R. Civ. P. 12(f); see also Colaprico v. Sun Microsystems, Inc.,
     758 F. Supp. 1335, 1339 (N.D. Cal. 1991) ("Motions to strike should not be granted unless it is
24   clear that the matter to be stricken could have no possible bearing on the subject matter of the
     litigation."). Both Plaintiff and the online complaints allege that Defendant conducted similar
25   fraudulent conduct related to the imposition of late fees, and thus the Court cannot conclude that
     these online complaints will have "no possible bearing on the subject matter of the litigation." Id.
26   [4] Plaintiff does allege that "after a customer places a stop payment order on his or her mortgage
     check in reliance on Provident's representation that the check was never received, Provident will
27   attempt to cash the check and then, after the bank declines, assess further monetary penalties and
     fees upon the customer." ECF No. 1 ¶ 4. This theory, however, is never developed in the
28   Complaint, nor in Plaintiff's briefing. Moreover, Plaintiff admits that "[n]either Plaintiff nor his
     wife ever placed a stop payment order" on their February 2015 mortgage check. Id. ¶ 23.

1    Plaintiff offer any argument why the Court should not dismiss these claims upon a finding that

2    Plaintiff has not sufficiently pleaded a violation of the terms of the loan agreement.  See ECF No.

3    18 at 10–18.  Accordingly, the Court dismisses Plaintiff's claims for conversion, unjust

4    enrichment, and violation of the FDUTPA with leave to amend.  For reasons discussed below, the

5    Court dismisses Plaintiff's claim for "unconscionability" without leave to amend.[5]

6                      **3.        Unconscionability**

7           Plaintiff alleges that "Provident's late fee policies and practices are substantively and

8    procedurally unconscionable."  ECF No. 1 ¶ 20.  The parties dispute (1) whether unconscionability

9    is a cause of action under Florida law, as opposed to an affirmative defense; and (2) whether such

10   a claim can seek damages.  See ECF No. 16 at 11–12; ECF No. 18 at 5–8.  The Court need not

11   address these arguments, however, because Plaintiff's claim suffers from an even more basic

12   deficiency.

13          As a case relied upon by Plaintiff notes, to succeed on a claim of unconscionability under

14   Florida law, Plaintiff must demonstrate both procedural and substantive unconscionability.  In re

15   Checking Account Overdraft Litigation, 694 F. Supp. 2d 1302, 1319 (S.D. Fla. 2010).  Substantive

16   unconscionability, in turn, "requires an assessment of whether the contract terms are so

17   outrageously unfair as to shock the judicial conscience."  Id. (quoting Bland v. Health Care & Ret.

18   Corp. of Am., 927 So. 2d 252, 256 (Fla. Dist. Ct. App. 2006)) (emphasis added).  Plaintiff's

19   unconscionability claim, however, is premised not on an outrageously unfair contract term, but

20   rather on "Provident's late fee policies and practices."  ECF No. 1 ¶ 43 ("Provident does not

21   disclose . . . its policy of deliberately denying or delaying receipt of mortgage payments in order to

22   impose late fees [and] refuses to waive fraudulently imposed late fees . . . ."); see also id. ¶ 44

23   ("The imposition of fraudulent late fees and associated monetary penalties is itself

24   unconscionable.").  While Plaintiff attempts to re-characterize his unconscionability claim as

25

26

27   _____

     [5] The Court need not address the additional, independent reasons why Defendant argues these
     claims should be dismissed.  See ECF No. 16 at 13–16.  The Court will address these arguments if
28   and when Plaintiff cures the deficiencies in the Complaint identified here and Defendant raises
     these arguments again in a subsequent motion to dismiss.

United States District Court
Northern District of California

1   challenging Provident's "enforce[ment] of the Challenged Provision,"[6] Plaintiff fails to cite any

2   authority for the proposition that the enforcement of a contractual provision can itself be

3   unconscionable, as opposed to a breach of the underlying contract.

4          Accordingly, the Court dismisses Plaintiff's unconscionability claim because Plaintiff has

5   failed to allege any contract term which is allegedly "so outrageously unfair as to shock the

6   judicial conscience." In re Checking Account Overdraft Litigation, 694 F. Supp. 2d at 1319.

7   Because the Court finds that amendment of this claim would be futile, the Court dismisses

8   Plaintiff's unconscionability claim it with prejudice.

9                    **4.      Standing to Pursue Injunctive Relief**

10         "Standing must be shown with respect to each form of relief sought, whether it be

11  injunctive relief, damages or civil penalties." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985

12  (9th Cir. 2007) (citing Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S.

13  167, 185 (2000)). "In a class action, standing is satisfied if at least one named plaintiff meets the

14  requirements." Id. "The standing formulation for a plaintiff seeking prospective injunctive relief"

15  requires the plaintiff to "demonstrate that he has suffered or is threatened with a 'concrete and

16  particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a

17  similar way.'" Id. (internal citation omitted) (quoting Lujan v. Defenders of Wildlife, 504 U.S.

18  555, 560 (1992)). "As to the second inquiry, [Plaintiff] must establish a 'real and immediate threat

19  of repeated injury.'" Id. (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)).

20         Defendant argues that Plaintiff lacks standing to bring any claim seeking injunctive or

21  declaratory relief because Plaintiff "paid off his mortgage in full prior to filing his Complaint"

22  and, as a result, Provident could not "assess any late charges going forward." ECF No. 16 at 17.

23  Plaintiff does not dispute that he has paid of his mortgage in full. ECF No. 18 at 18–20.  Instead,

24  Plaintiff argues that he has standing to seek injunctive relief because "Plaintiff has not alleged that

25  he would not consider entering into another mortgage with Defendant in the event Defendant

26

27  ───────────────
    [6] Plaintiff defines the "Challenged Provision" as the provision of the loan agreement under which
28  "Plaintiff agreed to Provident's assessment of a late fee if his mortgage payment was not received
    within 15 days of its due date."  ECF No. 18 at 6–7.

United States District Court
Northern District of California

United States District Court
Northern District of California

changes its unlawful practices." <u>Id.</u> at 20.  The Court finds that such allegations do not establish a "real and immediate threat of repeated injury." <u>O'Shea</u>, 414 U.S. at 496; <u>see also</u> <u>Opperman v. Path, Inc.</u>, 84 F. Supp. 3d 962, 988 (N.D. Cal. 2015).[7]  Accordingly, Plaintiff's prayer for injunctive relief is dismissed without prejudice for lack of standing.

### 5.    Joinder of Required Party

Finally, Defendant argues that the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(7) for failure to join Plaintiff's wife as a required party.  "[T]o determine whether dismissal is appropriate, the Court engages in 'three successive inquiries.'" <u>Edwards v. Fed. Home Loan Mortgage Corp.</u>, No. 12-cv-04868-JSW, 2012 WL 5503532, at *3 (N.D. Cal. Nov. 13, 2012) (quoting <u>EEOC v. Peabody Western Coal Co.</u>, 400 F.3d 774, 779 (9th Cir. 2005)).  "First, the district court must determine whether the absent party is a 'required' party."  <u>Id.</u>  A party is "required" under Fed. R. Civ. P. 19(a)(1) if: "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

The Court agrees with Defendant's argument that because Plaintiff's wife is a signatory to

---

[7] Each of the cases relied on by Plaintiff to support a finding of standing is inapposite.  <u>See</u>, <u>e.g.</u> <u>Fortyune v. Am. Multi-Cinema, Inc.</u>, No. 10-cv-5551, 2002 WL 32985838, at *7 (C.D. Cal. Oct. 22, 2002) ("Because Plaintiff and his wife frequent the theater and lack of accommodation continues to exist, the court finds that Plaintiff has established a likelihood of future injury.); <u>Ries v. Ariz. Beverages USA LLC</u>, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("[T]he record is devoid of any grounds to discount plaintiffs' stated intent to purchase in the future, thereby satisfying the requisites for standing.").  While <u>Henderson v. Gruma Corp.</u> provides some support for Plaintiff's argument, that case is distinguishable because the Court's finding of a lack of standing here would not "allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice," as the <u>Henderson</u> court found.  No. 10-cv-4173, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) (quoting <u>Fortyune</u>, 2002 WL 32985838, at *7).  Likewise, while <u>Koehler v. Litehouse, Inc.</u>, No. 13-cv-3482, 2014 WL 325241-SI (N.D. Cal. Dec. 13, 2012) provides some support for Plaintiff's argument, Defendant notes that Judge Illston subsequently disavowed the reasoning in <u>Koehler</u> and instead held that "to establish standing, plaintiff must allege that he intends to" act in such a way that he may be harmed in the future if not for the requested injunctive relief.  <u>Rahman v. Mott's LLP</u>, No. 13-cv-3482, 2014 WL 325241, at *10 & n. 9 (N.D. Cal. Jan. 29, 2014).  Plaintiff, here, has not alleged that he intends to obtain another mortgage from Defendant.

United States District Court
Northern District of California

the loan agreement, "[u]nless she appears, there can be no guarantee she will not sue Provident over the same alleged wrongdoing in a separate lawsuit or in another forum." ECF No. 16 at 17–18. As a result, Provident "faces a substantial risk of double, multiple, or otherwise inconsistent obligations." Id. at 18. Accordingly, the Court concludes that Plaintiff's wife is a "required" party in this action. See Edwards, 2012 WL 5503532, at *3 (finding husband of Plaintiff a "required" party because "Defendants have a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of Plaintiff's and [her husband's] mutual interests relating to the Property.").[8]

Second, because Plaintiff's wife is a "required" party, the Court must determine whether joinder is feasible. Id. at *4. Under Rule 19(a), "joinder is not 'feasible' when: (1) venue is improper; (2) the absentee party is not subject to personal jurisdiction; and (3) when joinder would destroy subject matter jurisdiction." Id. Defendants do not argue, and the Court finds no reason to suggest, that joinder of Plaintiff's wife would not be feasible.[9] Accordingly, if Plaintiff elects to file an amended complaint, he must join his wife as a party.

## CONCLUSION

For the foregoing reasons, the Court dismisses with leave to amend Plaintiff's breach of contract, conversion, unjust enrichment, and FDUTPA claims. The Court also dismisses without prejudice Plaintiff's prayer for injunctive relief, as it relates to each of Plaintiff's claims, for lack of standing. The Court dismisses without leave to amend Plaintiff's "unconscionability" claim. If

/ / /

/ / /

/ / /

---

[8] Although Plaintiff seeks to distinguish this case from Edwards because this case involves alleged consumer fraud, whereas Edwards involved an allegedly wrongful foreclosure, Plaintiff does not offer any reasoning why this distinction should lead to a different result regarding Plaintiff's wife's status as a required party. ECF No. 18 at 21. Moreover, Plaintiff cites no authority suggesting that a plaintiff's spouse is not a required party "in a class action alleging consumer fraud when the alleged damages affected a shared account." Id.

[9] As the Edwards court noted, "[t]he third inquiry is whether in 'equity and good conscience' the action can continue without the absent party. However, courts only engage in this inquiry if the absent party is necessary and joinder is not feasible." 2012 WL 5503532, at *4 n.3 (citation omitted).

1   Plaintiff elects to file an amended complaint, Plaintiff shall join his wife as a plaintiff, and shall

2   file the amended complaint within 30 days of this order.

3           IT IS SO ORDERED.

4   Dated:  December 22, 2015

5

6   _____
                    JON S. TIGAR
7                   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California