UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. STEINBERG, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>PROVIDENT FUNDING ASSOCIATES, L.P.,<br><br>        Defendant. | Case No. 15-cv-03743-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: ECF No. 28 |

This is a putative class action brought by Plaintiffs Robert L. Steinberg and Sonia Steinberg against Defendant Provident Funding Associates, L.P. ("Provident"), alleging claims for breach of contract, conversion, unjust enrichment, and violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"). Before the Court is Provident's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint. ECF No. 28. The motion will be granted in part and denied in part.

## I.   BACKGROUND

### A.   The First Amended Complaint ("FAC")

Plaintiffs allege they entered into a written contract with Provident "whereby Provident agreed to fund and service mortgage loans" for Plaintiffs. ECF No. 23 ¶ 38. Under the loan agreement, payments are due to Provident on the 1st of each month. Id. ¶ 15. If payment is not received by the 16th of the month, Provident assesses a late fee. Id. According to Plaintiffs, "[e]ven when customers making their monthly mortgage payment by check or money order submit payment on time, Provident assesses a late fee." Id. ¶ 17.

On February 7, 2015, Mrs. Steinberg, who is also a signatory to the loan agreement, mailed the Steinberg's February mortgage payment check to Provident via first-class mail with the United

States Postal Service ("USPS"). Id. ¶ 18. On February 18, 2015, Mrs. Steinberg received a telephone call from Provident informing her that Provident had not received the mortgage payment for February. Id. ¶ 21. After speaking with a Provident representative that same day, Mrs. Steinberg completed the February mortgage payment online. Id. ¶ 22–23. On February 19, 2015, Provident sent a letter to Plaintiffs stating that Provident had received Plaintiffs' February mortgage check but it was "unable to apply the funds to [Plaintiffs'] account due to the following reason: Payment stop on check." Id. ¶ 24. Neither Mr. Steinberg nor Mrs. Steinberg ever placed a stop payment order on the February mortgage check. Id. ¶ 24. Provident subsequently assessed a late fee of approximately $200 on Plaintiffs' account. Id. ¶ 25. Plaintiffs allege that at no point did Provident present Plaintiffs with any documentation, or any evidence of any kind, supporting its claim that the payment was not timely received. Id. Plaintiffs also allege, "upon information and belief," that Provident shreds or otherwise disposes of the envelopes in which mortgage payments are mailed shortly after receipt. Id.

The FAC bolsters Plaintiffs' allegations regarding the allegedly fraudulent late fees in two ways. First, Plaintiffs quote numerous online consumer complaints. Id. ¶ 17. For instance, one of the online complaints claimed that Provident "sent me a late notice when they had check in hand." Id. Another complaint stated: "Provident has 'lost' my mailed payments and charged me late fees when the payment was mailed with a week to spare." Id. Still another complaint stated: "Late fee is incurred if received after the 16th of the month. I mailed payment on the 9th. Provident said they didn't receive it until the 17th which is BS because I mailed an insurance payment to a company in [California] the same day . . . and they received it on the 13th." Id. A fourth complaint "wonder[ed] if [Provident was] just holding onto the checks to purposely make them late so they can charge a late fee." Id.

Second, Plaintiffs allege that according to the USPS website, domestic first-class mail is delivered in "1-3 business days," and that the USPS Service Standards Map confirms that a first-class letter sent from South Florida—the location from which Plaintiffs sent their February 2015 payment—to Provident's mailing address in Los Angeles, California is expected to arrive in three days. Id. ¶ 19. Plaintiffs also allege that, according to a 2015 report prepared for the USPS by the

International Business Machines Corporation, approximately 94% of first-class mail delivered within Los Angeles arrives on time or within one day of the Service Standard (in this case, within 2-4 business days), and approximately 98% of such mail arrives within two days of the Service Standard (in this case, within 3-5 business days). Id. "Therefore, on information and belief," Plaintiffs allege that "Provident received Plaintiffs' payment prior to the expiration of the applicable 15-day grace period." Id. ¶ 20. Finally, Plaintiffs note that further evidence regarding the date and time of receipt of Plaintiffs' February 2015 payment is "within the exclusive possession, custody, and control of Provident." Id.

### B. Procedural History

Mr. Steinberg filed the initial Class Action Compliant on August 17, 2015. ECF No. 1. On October 9, 2015, Provident moved the Court to dismiss Mr. Steinberg's class action complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). ECF No. 16. The Court granted Provident's motion to dismiss on December 22, 2015. ECF No. 22. Noting that the parties' loan agreement provides that Provident is entitled to a late fee from the Steinberg's if Provident has not *received* the full amount of any monthly payment by the end of 15 calendar days after the date it is due, the Court held that Mr. Steinberg's claims failed because he had not alleged when Provident received his February payment, just that it had been sent on February 7, 2015. Id. at 5. The Court thus dismissed Mr. Steinberg's breach of contract, conversion, unjust enrichment, and FDUTPA claims with leave to amend. Id. at 11. The Court also dismissed with leave to amend Mr. Steinberg's prayer for injunctive relief, finding that Mr. Steinberg lacked standing to seek such relief. Id. Finally, the Court dismissed Mr. Steinberg's unconscionability claim with prejudice and ordered Mr. Steinberg to join Mrs. Steinberg as a plaintiff in the event he elected to file an amended complaint. Id. at 11–12.

On January 21, 2016, Plaintiffs filed the FAC. ECF No. 23. On February 19, 2016, Provident filed a motion to dismiss the FAC, ECF No. 28, which motion the Court now considers.

### C. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

///

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). When addressing a motion to dismiss, courts must determine whether a plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts must accept both the material facts alleged in the complaint and any reasonable inferences to be drawn from those facts as true. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). But "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient bases to support a complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

When any of a complaint's causes of action allege fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). This heightened standard requires the complainant to identify "what is false or misleading about a statement, and why it is false." Decker v. GlenFed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994). In essence, a cause of action governed by Rule 9(b) must include "the who, what, when, where, and how" of the allegedly fraudulent conduct. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997). Courts must apply this standard to both claims in which fraud is an essential element and those in which the complainant "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." Vess, 317 F.3d at 1103. The heightened pleading standard should not, however, be applied to causes of action neither rooted individually in fraud nor attached to a claim in which fraudulent conduct is an essential element. Id. at 1105.

"Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated. The proper route is to *disregard* averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." Id. (quoting Lone Star Ladies Inv. Club v. Schlotzsky's Inc., 238 F.3d 363, 368 (5th Cir. 2001)). "Thus, if particular averments of fraud are insufficiently pled under Rule 9(b), a

4

1  district court should 'disregard' those averments, or 'strip' them from the claim.  The court should
2  then examine the allegations that remain to determine whether they state a claim." Id.

### III.  ANALYSIS

#### A.  Breach of Contract

Plaintiffs' first cause of action is for breach of contract and breach of the covenant of good faith and fair dealing.  ECF No. 23 ¶37–42.  Generally "[a] breach of contract claim falls outside the reach of Rule 9(b) because such a claim does not require intent to defraud, a false representation, or other elements of fraudulent misrepresentation." Ronpak, Inc. v. Elecs. for Imaging, Inc., No. 14-cv-04058-JST, 2015 WL 179560, at *4 (N.D. Cal. Jan. 14, 2015) (citing Vess, 317 F.3d at 1105–06).  Here, however, Plaintiffs allege "Provident has breached the covenant of good faith and fair dealing in its contracts with Plaintiff and the Class by assessing fraudulent late fees associated with penalties." Id. ¶ 40.  Because Plaintiffs have made an averment of fraud "in a claim in which fraud is not an element, . . . [t]he proper route is to disregard" such averment of fraud if it does not meet Rule 9(b)'s standard and "then ask whether a claim has been stated" under Rule 8's more lenient standard. Vess, 317 F.3d at 1105 (quoting Lone Star Ladies, 238 F.3d at 368).

The Court previously dismissed Mr. Steinberg's Class Action Complaint because Mr. Steinberg failed to allege when Provident received his February payment.  ECF No. 22 at 5.  The Court found that although Mr. Steinberg alleged that Mrs. Steinberg mailed the February mortgage payment check on February 7, 2015, Mr. Steinberg had failed to plead facts upon which the Court could draw a reasonable inference that Provident timely received his February payment and thus breached the loan agreement by charging Mr. Steinberg a late fee. Id.

The FAC does not suffer from the same defect.  The FAC includes a citation to a third party report prepared for USPS, which concludes that approximately 98% of first-class mail delivered in Los Angeles (where Provident is located) arrives within two days of USPS's 1–3 day service standard.  ECF No. 23 ¶ 19 .  That is, according to the FAC, 98% of first-class mail delivered in Los Angeles arrives within 5 business days of mailing.  Plaintiffs allege that Mrs. Steinberg mailed Plaintiffs' February 2015 mortgage payment on February 7, 2015. Id. ¶ 18.

1   Combining these two allegations, it is reasonable to infer that Provident received Plaintiffs'
2   February 2015 mortgage payment by February 17, 2015,[1] a full 10 days (and six business days)
3   after the payment was mailed.  While Provident's alternative explanation—that the mail was
4   delayed and that Provident did not, in fact, receive the Steinberg's payment until February 19,
5   2015—is likewise plausible, the Court concludes that this alternative explanation is not "so
6   convincing that [it renders] plaintiff's explanation . . . *im*plausible." Starr v. Baca, 652 F.3d 1202,
7   1216 (9th Cir. 2012) (emphasis in original).  Accordingly, the Court denies Provident's motion to
8   dismiss Plaintiff's first claim.

   **B.   Conversion**

   Under Florida law, the tort of conversion is "an act of dominion wrongfully asserted over another's property inconsistent with his ownership of it." Kee v. Nat'l Reserve Life Ins. Co., 918 F.2d 1538, 1541 (11th Cir. 1990).  According to the "economic loss rule," "[n]either an obligation to pay money nor a breach of contract generally give rise to a claim of conversion in tort." Id. "Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort." Ginzberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490, 494 (Fla. Dist. Ct. App. 1994).  However, the Florida Supreme Court has expressly limited the application of the economic loss rule to exclude torts committed "independently of the contract breach." Indem. Ins. Co. v. Am. Aviation, Inc., 891 So. 2d 532, 536-42 (Fla. 2004).

   Provident argues that Plaintiffs' conversion claim should be dismissed under the economic loss rule because it "is based entirely on, and is indistinguishable from, the alleged breach" of contract.  ECF No. 28 at 23.  Plaintiffs counter that the FAC alleges not merely that Provident failed to perform by charging late fees on timely payments, but that Provident committed an affirmative and intentional act of converting the late fees to its own use by intentionally processing payments late.  ECF No. 32 at 13.  These allegations, according to Plaintiffs, render Plaintiffs'

---

[1] Plaintiffs allege that their payment would have been considered timely if Provident received it on or before February 17, 2015 because February 16, 2015 (15 days after the February 1, 2015 due date) was a federal holiday (President's Day).  ECF No. 23 at 15 n.22.

United States District Court
Northern District of California

conversion claim a "separate and independent tort." Id. (quoting Burke v. Napieracz, 674 So. 2d 756, 758 (Fla. Ct. App. 1996)).

The FAC does not support Plaintiffs' argument in this respect. Unlike in the cases cited by Plaintiff, Plaintiff's conversion claim is not based on any conduct other than that alleged with respect to Plaintiff's breach of contract claim. Plaintiffs' conversion claim alleges that "Provident has wrongfully collected late fees from Plaintiffs . . . ." ECF No. 23 ¶ 45. Plaintiffs' breach claim alleges that "Provident has breached the covenant of good faith and fair dealing in its contracts with Plaintiffs . . . by assessing fraudulent late fees." Id. ¶ 40. Thus, while Plaintiffs' conversion claim repackages the allegations from its breach claim with reference to the elements of a conversion claim, the underlying factual basis for the two claims is the same. Accordingly, the Court concludes that the economic loss rule applies and dismisses Plaintiffs' conversion claim for that reason. Because the Court has not previously dismissed the conversion claim on this ground, the Court dismisses the conversion claim with leave to amend.

### C. Unjust Enrichment

Provident asserts that Plaintiffs cannot bring a claim for unjust enrichment because Florida law does not allow Plaintiffs to pursue an unjust enrichment claim where, as here, an express contract governs the subject matter of the dispute. ECF No. 28 at 17. Plaintiffs respond that it would be premature to dismiss their claim for unjust enrichment at this stage because Plaintiffs may still be entitled to recover for unjust enrichment if their contractual claim fails. ECF No. 32 at 9.

The Court concludes that Plaintiffs cannot plead a claim for unjust enrichment under Florida law where it is uncontested that an express contract exists between Provident and Plaintiffs. See Alhassid v. Bank of Am., N.A., 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014) ("Plaintiffs cannot maintain their unjust enrichment claims under the facts as alleged here because express contracts, the authenticity of which Plaintiffs cannot contest, do in fact govern the subject of Plaintiffs' dispute."); Degutis v. Fin. Freedom, LLC, 978 F. Supp.2d 1243, 1266 (M.D. Fla. 2013) (finding that plaintiff's claim for unjust enrichment under Florida law failed where it was "undisputed that an express mortgage contracts exists between Plaintiff and the Defendants.");

7

Zarella v. Pac. Life Ins. Corp., 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2011) ("Though Rule 8 permits alternative pleading, . . . 'an unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute.'") (quoting In re Managed Care Litig., 185 F. Supp. 2d 1310, 1337–38 (S.D. Fla. 2002)); Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Corp., 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) (Where there is "a valid express contract that no party challenges, Plaintiff may not recover under unjust enrichment, and may not assert it as an alternative claim under Federal Rule [of Civil Procedure 8].").

Plaintiffs cite several cases to support their argument that an unjust enrichment claim may be pleaded in the alternative. ECF No. 32 at 14–15. However, as Provident notes, ECF No. 33 at 14, these cases are distinguishable because the validity or scope of the underlying contract was in dispute. See, e.g., Tracfone Wireless, Inc. v. Access Telecomm, Inc., 642 F. Supp. 2d 1354, 1366 (S.D. Fla. 2009) ("Plaintiff's allegations of unjust enrichment encompass specialty phones allegedly bought by Defendants that are not necessarily subject to the 'shrinkwrap' agreements that form the basis of Plaintiffs count for breach of contract."); Manicini Enters. v. Am. Express Corp., 236 F.R.D. 695, 699 (S.D. Fla. 2006) ("Plaintiff should be permitted to plead alternative equitable claims for relief as the existence of express contracts between the Parties has yet to be proven. . . . However, if the alleged invoices are found to constitute express contracts at a later juncture then Plaintiff's unjust enrichment . . . claim[] will be dismissed at that time."); Mobil Oil Corp. v. Dade Cty. Esoil Mgmt. Co., 982 F. Supp. 873, 880 (S.D. Fla. 1997) ("Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature.").[2] Because neither party disputes that the validity of the parties' loan agreement, that express contract precludes Plaintiffs' unjust enrichment claim. As a result, Plaintiffs' claim for unjust enrichment is dismissed with leave to amend.

---

[2] While In re Checking Account Overdraft Litig. appears to support Plaintiffs' position where the validity of the underlying contract did not appear to be in dispute, 694 F. Supp. 2d 1302, 1321 (S.D. Fla. 2010), that case relied solely on Tracfone, Manicini, and Mobil Oil, which cases the Court has found already concluded are inapposite. Moreover, Plaintiffs have failed to square the holding in In re Checking with the more recent authority relied upon by the Court above.

### D. The FDUTPA Claim

The Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA") aims to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, and unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). "A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages." Alhassid v. Bank of Am., N.A., 60 F. Supp. 3d 1302, 1323 (S.D. Fla. 2014). "Trade or commerce" is defined as the "advertising, soliciting, providing, offering, or distributing, whether by sale, rental or otherwise, of any good or service, or any property . . . , wherever situated." Fla. Stat. § 501.203(8).

Provident argues that Plaintiffs have failed to state a claim because Provident's servicing of an existing mortgage loan does not qualify as "trade or commerce" under the FDUTPA. ECF No. 28 at 24. Indeed, several Florida district courts have held that loan servicing does not qualify as "trade or commerce" for the purposes of the FDUTPA. See Alhassid, 60 F. Supp. 3d at 1323 (S.D. Fla. 2014) ("If all the SAC alleged were loan collection activities, even if those activities were improper, FDUTPA would not apply."); Benjamin v. Citi Mortgage, Inc., No. 12-cv-62291, 2013 WL 1891284, at*4–5 (S.D. Fla. May 6, 2013) ("[E]ven assuming the facts as pled establish that the defendant engaged in deceptive acts or unfair trade practices, the loan servicer's actions do not qualify as 'trade or commerce' under the Act [because] the loan servicer did not 'advertise, solicit, provide, offer, or distribute' anything to the plaintiffs."); Trent v. Mortgage Electronic Reg. Sys's, Inc., 618 F.Supp.2d 1356, 1365 n.12 (M.D. Fla. 2007) (finding that "obtain[ing] a legal interest in a note from third party lenders" and "proceed[ing] to foreclosure" did not constitute "trade or commerce" under the FDUTPA.).

Plaintiffs respond that Provident's conduct expands beyond the scope of loan servicing because Provident "acted fraudulently and *illegally* in assessing late fees to Plaintiffs and the Class in response to timely payments." ECF No. 32 at 16 (emphasis in original). Plaintiffs cite Alhassid to support their argument that loan servicing may be subject to the FDUTPA when a loan servicer seeks to collect fees outside of its legal entitlements. 60 F. Supp. 3d at 1324 (finding allegations

that loan servicer "billed Plaintiffs for *specific services* which were unauthorized and which [the loan servicer] never performed," including "property preservation," "property inspections," and "property appraisals" could "be construed as the separate offer or provision of services within the meaning of FDUTPA") (emphasis in original).  Alhassid, however, is distinguishable because Provident does not seek to collect fees beyond what was provided for as part of the loan agreement.  Moreover, unlike in Alhassid, Provident never billed Plaintiffs "for specific services which were unauthorized and which [Provident] never performed." 60 F. Supp. 3d at 1324.

The Court concludes that Plaintiffs have failed to state a claim under the FDUTPA because Provident's conduct as alleged in the complaint does not constitute "trade or commerce." Accordingly, Plaintiffs' FDUTPA claim is dismissed with leave to amend.

### E.     Injunctive Relief

The Court previously dismissed Mr. Steinberg's prayer for injunctive relief without prejudice, finding that Mr. Steinberg lacked standing to pursue such relief because he had already paid off his mortgage in full.  ECF No. 22 at 9.  Provident argues that the FAC "alleges no new facts to change this conclusion."  ECF No. 28 at 22.  Plaintiffs offer no argument in response. Accordingly, the Court will dismiss Plaintiffs' prayer for injunctive relief with prejudice.

## IV.    CONCLUSION

The Court concludes that Plaintiffs have stated a claim for breach of contract, but have failed to state a claim for conversion, unjust enrichment, and violation of the FDUTPA. Accordingly, the Court grants Provident's motion to dismiss the conversion, unjust enrichment, and FDUTPA claims without prejudice.  The Court also dismisses Plaintiffs' prayer for injunctive relief with prejudice.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

If Plaintiffs intend to amend their complaint, they may do so within fifteen days of this order, solely for the purpose of addressing the deficiencies identified in this order.  Otherwise, the case will proceed only as to Plaintiffs' claim for breach of contract.

IT IS SO ORDERED.

Dated:  June 17, 2016

_____
JON S. TIGAR
United States District Judge